622 S.E.2d 529

**In the Matter of Lillie R. DAVIS, Respondent.**

**No. 26065.**

Supreme Court of South Carolina.

Submitted Sept. 27, 2005.

Decided Nov. 14, 2005.

Henry B. Richardson, Jr., Disciplinary Counsel, and Robert E. Bogan, Assistant Deputy Attorney General, both of Columbia, for the Office of Disciplinary Counsel.

Susan B. Lipscomb, of Parker Poe Adams & Bernstein, L.L.P., of Columbia, for respondent.

PER CURIAM:

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an

Agreement for Discipline by Consent (Agreement) pursuant to Rule 21, RLDE, Rule 413, SCACR. In the Agreement, respondent admits misconduct and consents to the imposition of a definite suspension not to exceed two years or any lesser sanction set forth in Rule 7(b), RLDE, Rule 413, SCACR. We accept the Agreement and impose a two year definite suspension from the practice of law. The facts, as set forth in the Agreement, are as follows:

## FACTS

On January 28, 2002, respondent was suspended from the practice of law for twenty (20) months. *In the Matter of Davis*, 348 S.C. 199, 559 S.E.2d 573 (2002).[1] At the time of her suspension, respondent assured ODC that she would close her practice in an orderly manner and that it was not necessary to appoint an attorney to protect her clients' interests.

In connection with her suspension and the closing of her practice, respondent executed an affidavit on February 12, 2002, in which she attested to her compliance with Rule 30, RLDE. In relevant part, respondent's affidavit states:

4. In accordance with Rule 30 of Rule 413, SCAR [sic] I have notified by registered or certified mail, return receipt requested, all clients being represented by me in a pending matter.

5. The notice advises the client of the suspension and of the consequent inability to act as an attorney. The notice also advises the client to seek legal advice of the client's own choice elsewhere, and, if the matter involves pending litigation or administrative proceedings, of the desirability of the prompt substitution of another lawyer to act as the client's attorney in the proceeding.

6. I have also notified or caused to be notified, any co-counsel in any pending matter and any opposing counsel, or in the absence of opposing counsel, the adverse parties, of the suspension and the consequent inability of the lawyer to act as an attorney. The notice states my place of residence.

---

1. Respondent has not sought to be reinstated pursuant to Rule 33, RLDE, Rule 413, SCACR.

7. In the event the client did not obtain substitute counsel within ten days of the notice, I moved in the court or agency in which the proceedings were pending for leave to withdraw.

8. I have promptly refunded any fees paid in advance that have not been earned. I have delivered to all clients being represented in pending matters any papers of [sic] other property to which they are entitled and notified them of and any counsel representing them of a suitable time and place where the papers and other property may be obtained, calling attention to any urgency for obtaining the papers and other property.

9. I have kept and will maintain records showing compliance with the requirements of Rule 30 of Rule 413, SCAR [sic] and shall make these records available to disciplinary counsel upon request.

Underline added.

## Matter I

On or about January 23, 2002, Client A met with and retained respondent for a domestic matter. At that meeting, Client A executed a fee agreement for $2,500 and paid respondent $200 towards that fee. Client A paid the balance of the fee, $2,300, a few days later.

After learning respondent's telephone had been disconnected, Client A alleges she telephoned the Commission on Lawyer Conduct and discovered respondent had been suspended. Although Client A acknowledges she learned of respondent's suspension before respondent executed the above-referenced affidavit of compliance with Rule 30, Client A alleges she did not subsequently receive written notice as respondent represented in the affidavit. Respondent does not dispute Client A's allegation for purposes of the Agreement, but explains she believes Client was sent notice in compliance with Rule 30.

Respondent did not refund the unearned portion of Client A's fee as represented in her affidavit. Client A petitioned the Lawyers' Fund for Client Protection (Lawyers' Fund) which determined Client A was entitled to $2,500.

## Matter II

At the time of her suspension on January 28, 2002, respondent was shown on the records of the United States Bankruptcy Court as counsel of record in twelve pending bankruptcy matters, though respondent represents two of the matters had been concluded. As of February 27, 2002, fifteen days after executing the above-referenced affidavit, respondent remained counsel of record in nine bankruptcy matters according to the records of the Bankruptcy Court. Orders of substitution in two of those matters were not submitted to the Bankruptcy Court until May 2002.

Respondent explains that she may have continued to appear as counsel on the bankruptcy court's records because some of the matters had been dismissed, but orders had not yet been issued, and because other matters were inactive and clients were making payments.

## Matter III

In February 2001, Client B paid respondent $1,200 in fees for a divorce matter. Client B alleges that she made several long distance telephone calls and trips to Columbia from Orangeburg to attempt to contact respondent, but usually reached respondent's answering machine or was told that respondent was not "in" but would be "in touch." Respondent represents that she met with Client B whenever Client B had a scheduled appointment, but has no knowledge of Client B's trips to Columbia or long distance telephone calls.

In addition, Client B's complaint to ODC, dated March 25, 2002, alleged that respondent had not notified her that she had been suspended from the practice of law.

Respondent provided ODC with a copy of an unsigned letter dated May 2, 2002, from respondent to Client B, in which respondent notified Client B of the suspension, purported to return Client B's file, and offered to substitute respondent's brother or "a couple of my colleagues" as counsel or, alternatively, return $550 in unearned fees.

Respondent's response to the Notice of Full Investigation dated November 21, 2002, acknowledges that Client B's file was sent by overnight mail at a date later than May 2, 2002,

and further states that respondent "still plans to make every effort to refund $550 to [Client B] as soon as she is able to do so."

As of the date of the Agreement, respondent had not refunded the $550 to Client B.

## Matter IV

Client C retained respondent in a domestic matter and paid her $2,190. The court subsequently ordered Client C's husband to pay $1,188 of Client C's attorney's fees. Respondent received and retained the $1,188 as additional fees for herself.

Respondent represents that the attorney's fee award by the court was for additional work on behalf of Client C for which Client C had not paid. In her Response to Notice of Full Investigation, respondent stated:

The hearing proceedings went on for an extended period of time. The Court was not able to break for lunch, because what was intended to be a hearing took the length of a trial. In the Court's award of attorney's fees and other awards, the Court noted a lot of the Court's time had been expended on the [Client C] matter. Accordingly, it required unanticipated attorney time, which [respondent] believes entitled her to additional fees. In any event, [respondent's] time spent on the matter exceeded the attorney's fees paid.

## Matter V

Client D hired respondent to represent him in a Department of Social Services matter. Client D agreed to pay respondent $2,500. Client D made the last payment of $250 to respondent on December 14, 2001. Respondent was suspended on January 28, 2002. The matter had not been concluded at the time of respondent's suspension.

Client D alleges respondent failed to inform him of her suspension and that respondent told him in May 2002 that respondent had made arrangements for another attorney to handle his case. However, when Client D called the other attorney, he was told the attorney would not be able to take his case because respondent had already been paid the full fee.

In her response to the Notice of Full Investigation, respondent stated:

[she] represented [Client D] in a matter brought against him by the Department of Social Services, performing various specific tasks for which he would make periodic payments to her. [Respondent] represented him in Court, met with witnesses, and met with the Department of Social Services among other things. [Respondent] was suspended from the practice of law on January 28, 2002 and it was [her] understanding that [Client D] signed an order substituting [another attorney] as his attorney in this matter. [Respondent] understood that [the other attorney] would complete the representation of [Client D] and first learned of [Client D's] allegations on receipt of the Notice of Full Investigation.

Respondent acknowledges she did not pay any portion of the fee Client D had paid to her to the attorney she arranged to handle Client D's case.

### Matter VI

Respondent represented Client E on municipal court charges of failing to register a vehicle, driving under suspension, and operating an uninsured vehicle. At a court appearance on March 29, 2000, respondent told Client E to wait in the hall. Client E alleges that, after approximately one hour, respondent came out and told him "everything was straightened out" and handed Client E his driver's license.

On July 14, 2002, Client E was stopped for another traffic violation and charged with third offense driving under suspension. One of the prior DUS convictions that caused the July 2002 violation to be a third offense was the matter on which respondent represented Client E in March 2000.

Respondent did not respond to ODC's requests in this matter. Respondent notified ODC on December 17, 2003, that she was in the process of locating her file and that a response to the Notice of Full Investigation would be submitted as soon as possible. As of the date of the Agreement, respondent has neither responded to the Notice of Full Investigation nor submitted her file to ODC. Respondent represents that she has not been able to locate her file and believed that she

 

responded to the Notice of Full Investigation by submitting to questioning under oath by ODC.

## Matter VII

In January 2001, Client F was injured in a car accident; Client F retained respondent. After resolving the matter, respondent disbursed the proceeds. Client F alleged respondent failed to pay $98 to a medical provider.

Respondent believes all disbursements were made, but has not been able to locate her file to confirm this belief. For purposes of this Agreement, respondent does not dispute Client F's claim and takes the position that any failure to disburse funds was inadvertent.

## Matter VIII

Respondent's clients made claims to the Lawyers' Fund totaling $11,470. The Lawyers' Fund awarded respondent's clients $10,420, including the $2,500 awarded to Client A. Respondent has not reimbursed her clients or the Lawyers' Fund. She acknowledges her statement "I have promptly refunded any fees paid in advance that have not been earned" in her February 12, 2002 affidavit was inaccurate.

Respondent acknowledges that she had not fully cooperated with ODC in the investigation of these matters. She agreed to appear at ODC's office on January 7, 2004, for an appearance under oath pursuant to Rule 19(c)(4), RLDE, and agreed to bring with her files previously subpoenaed by ODC. Although respondent appeared, she did not produce the files. Respondent explained that the files were in storage and she had not had time to locate them despite the fact that prior subpoenas for the files had been issued.

During her appearance on January 7, 2004, respondent agreed to retrieve the files and provide them to ODC. The appearance was recessed to give respondent the opportunity to retrieve the files. As of the date of the Agreement, respondent had not provided the files to ODC. Respondent represents she has not been able to locate the files.

## *LAW*

■   Respondent admits that her misconduct constitutes grounds for discipline under Rule 413, RLDE, specifically Rule 7(a)(1) (lawyer shall not violate Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers) and Rule 30 (listing requirements for suspended lawyer).   In addition, respondent admits she has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (lawyer shall keep client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); Rule 1.5 (lawyer shall charge reasonable fee); Rule 1.15 (lawyer shall promptly deliver funds which belong to third person); Rule 1.16(d) (upon termination of representation, lawyer shall take steps to the extent reasonably practicable to protect client's interests, including giving reasonable notice to client and refunding unearned funds) Rule 8.1 (lawyer shall not knowingly fail to respond to lawful demand from disciplinary authority); and Rule 8.4(a) (it shall be professional misconduct for lawyer to violate Rules of Professional Conduct).[2]

## *CONCLUSION*

■   We accept the Agreement for Discipline by Consent and impose a two year definite suspension from the practice of law.   We deny respondent's request to apply the suspension retroactively to the date of her previous suspension.   Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30, RLDE, Rule 413, SCACR.

In addition, respondent shall pay restitution to all presently known and/or subsequently identified clients, banks, and other persons and entities who have incurred losses as a result of her misconduct in connection with these matters.   Respondent shall also reimburse the Lawyers' Fund for any claims paid as

---

**2.** Respondent's misconduct occurred before the effective date of the Amendments to the Rules of Professional Conduct. *See* Court Order dated June 20, 2005. The Rules cited in this opinion are those which were in effect at the time of respondent's misconduct.

a result of her misconduct in connection with these matters. ODC is directed to establish a restitution plan for respondent.[3]

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

**3.** We note respondent has specifically agreed not to apply for reinstatement unless and until all restitution has been paid in full.